SCRAFFORD *v.* RIGGS.

4-9072                                              226 S. W. 2d 963

Opinion delivered February 13, 1950.

*Geo. M. Booth,* for appellant.

*S. L. Richardson,* for appellee.

GRIFFIN SMITH, Chief Justice. The Chancery Court, acting in circumstances disclosing unusual difficulties, but exercising commendable directness in giving effect to the testator's most probable purpose, divided the estate of Abraham H. Riggs into two allotments. The first included those definite parts of the whole expressed in ninths, plus specific dollar bequests. The result was subtracted from the net estate and treated as residuary for distribution among all of the beneficiaries, and, as to proportions, in the same respect that the amount each received from the first allotment bore to the total of such allotment.

Stated somewhat differently, the proportionate share of the net estate allowable to each claimant was determined by reducing to a common dollar denominator each individual's share, thus creating the first allotment. Thereafter, the proportion so determined was used as the basis for finding what each beneficiary's share in the second allotment would be.

The nine persons remembered in the will [1] were (a) Sanford U. Riggs, (b) Alford G. Riggs, (c) Christine Smart, [2] (d) Lettie Riggs Scrafford, (e) Clifford Riggs, (f) Pearl Chastain, (g) Rosa McDowell Riggs, and (h) Christiana Thompson and her husband.

Assuming that the net estate available for distribution would be between $17,000 and $18,000, the Chancellor used $18,000 as a hypothetical base. Because (a), (b), and (c) were each to receive "an undivided one-ninth of

[1] Christiana Thompson's husband, Dewey, is included in the nine names.

[2] The bequests were: Sanford U. Riggs and Alford G. Riggs, 1/9th each; Christine Smart, 1/9th plus $200; Lettie Riggs Scrafford, $100; Clifford Riggs and Pearl Chastain, $200 each; Rosa McDowell Riggs, $1,000; Christiana Thompson and husband, $1,500. [In referring to Christine Smart we have at times mentioned her as (c-1) and (c-2). The first, (c-1) identifies the 1/9th willed to this beneficiary, while the second, (c-2) is the additional item of $200].

all of my estate of every nature whatsoever, both real and personal, wheresoever situated'', each of the three was credited with $2,000—a total of $6,000. But Mrs. Smart, (c), was to have one-ninth plus $200, so for the purpose of tabulation she is shown as (c-1) and (c-2). Those three persons, representing four bequest parts, would take $6,200. Specific amounts given (d), (e), (f), (g), and (h),—aggregating $3,000—would, when added to the $6,200, leave $8,800 for the secondary apportionment.

There can be little doubt that, up to this point, the Chancellor put into effect what the testator primarily intended; but the difficult problem is to decide whether failure of the will-maker to say with exactness what should be done with the remainder resulted in partial intestacy, or whether sufficient intent may be implied from the language used to justify a distribution along the lines Abraham H. Riggs most probably had in mind.

The will affords no guide respecting the testator's knowledge of values, although he must have understood that there were but few debts and that the net amount would be substantial. He was nearly seventy years of age and had spent more than forty years in Idaho. During most of six years preceding execution of the will he was at Boise, near an adopted daughter, but did not occupy the same residence. While in Idaho Riggs executed a will prepared by a competent attorney, the content of which is not disclosed by the record. As shown by witnesses whose testimony is competent as narrative only, Riggs spent his last few weeks with relatives near Pocahontas, Ark., with whom he was on good terms. G. W. Million, spoken of as ''Judge'', was the scrivener who served Mr. Riggs when the last will was drawn. It is not disputed that Million used the Idaho will as a guide, copying the style and form. He then placed the old document in a stove, where it was destroyed by fire.

All parties to the controversy here, during trial, treated the probated will as a valid instrument. There had been a petition for partition of certain lands, with

sale, and a request that proceeds be paid to the executor. Chancery Court was then asked to construe the will; and the action taken in response to this request is the subject of controversy.

.   .   .   .

Immediately following Item 10 of the will—the bequest to Christina Thompson and her husband, Dewey—there is this language: "The above [bequests] are made retroactive so that each beneficiary [shall] receive in proportion as the value of the estate shall increase or diminish. It is my desire that the beneficiaries mentioned herein shall receive my entire estate after the payment of my debts, such as necessary expenses of the administration and execution of this, my last will and testament".

While a witness was testifying that, in copying from the old will, Judge Million reached a certain point and then began deviating, there was an objection by counsel for appellees [Mr. Richardson] to consideration of what the testator told Judge Million regarding the changes that were to be made. Mr. Booth, representing the appellant, remarked, "The will shows that it follows the regular procedure or language of the [old] will form for a time, and then it changes completely". The Chancellor: "It is the Court's understanding that nobody is attacking this will. If this is error you should set me straight". Mr. Richardson: "My whole reason for putting this testimony in is that counsel [for appellant] made an argument that the testator thought he [had] disposed of all his property, and based it on $4,800. I am putting on this testimony to refute their contention". Mr. Booth: "The only reason that I asked the question is that the law looks behind the scene. I am not trying to contradict the will; but things are mixed up, and I am trying to throw some light on the interpretation. We just want the truth of what was intended".

From this colloquy we must assume that the will, as such, had been accepted; and, as expressed by Mr. Booth, the inquiry went to the single proposition of ascertaining what was intended.

It will be observed that Mr. Richardson had told the Court that appellant's contention, as presented by Mr. Booth, "was based on $4,800". There is no explanation of this figure. Neither attorney tells how the amount was presented for consideration in making the computations. By analogy, however, there is an answer, and that answer suggests a formula differing from the one used by the Chancellor. It will be discussed later.

What the Chancellor did was to take three ninths plus $200, plus $3,000, from $18,000, and subject the remaining $8,800 to the following apportionment:

Using the smallest bequest—$100 to (d)—as a unit, it was divided into 18,000 for 180 units. If [said the Chancellor] a single unit equaled this bequest to appellant, then twenty units would equal a ninth of $18,000, or the sums awarded, respectively, to (a) and to (b); twenty-two units would equal the two awards to (c)—as elsewhere stated, (c-1) and (c-2); two units would go to (e) and the same to (f), while (g) would receive ten units, and (h) fifteen. Then, dividing the remainder of $8,800 by 92 in order to ascertain the proportion, it is found that (d),—with one unit worth $100 when $9,200 was considered — is entitled to a one/92d part of $8,800, or $95.652. Other interests were arrived at in the same manner. Results are disclosed by the appended table, showing first and second allotments:

|  | First Allotment | Second Allotment (95.652%) | Total |
|---|---|---|---|
| (a) | $2,000 | $1,913.04 | $ 3,913.04 |
| (b) | 2,000 | 1,913.04 | 3,913.04 |
| (c) — (1x2) | 2,200 | 2,104.34 | 4,304.34 |
| (d) | 100 | 95.65 | 195.65 |
| (e) | 200 | 191.30 | 391.30 |
| (f) | 200 | 191.30 | 391.30 |
| (g) | 1,000 | 956.52 | 1,956.52 |
| (h) | 1,500 | 1,434.78 | 2,934.78 |
|  | $9,200 | $8,799.97 | $17,999.97 |

To show that the Chancellor did not arbitrarily settle on the first seemingly workable equation suggested, we might deal speculatively with what was prob-

ably being discussed when Mr. Richardson mentioned $4,800; for there could be this ratio:

A ninth to each of the two brothers and the sister, (a), (b), and (c-1), would account for three ninths, or a third of the whole. The remaining two-thirds were not dealt with by the testator on a fractional basis, but in terms of dollars. The aggregate of dollar bequests, $3,200, would therefore constitute the remaining two-thirds, since the intention was to dispose of the entire estate *in ninths plus dollars*. Consequently, if $3,200 be two-thirds, one-third would be $1,600, and $1,600 added to $3,200 make $4,800, or three thirds.

Another equating method, not mentioned in the briefs, may be stated this way: Deduct $4,800 from the net $18,000 estate, and $13,200 remains. One ninth of $13,200 is $1,466.67. For purposes of comparison, $1,466.67 will be tentatively credited to each of the first three beneficiaries, (a), (b), and (c-1), denoting their respective shares in the first allotment. The sum of these three ($4,400) combined with $3,200 apportionable to (c-2) and (d) through (h) yields $7,600, and might be dealt with as the first allotment. Assuming that a basis is thus provided for apportioning the net estate, and that it likewise settles the proportion for distributing the remainder of $10,400,—that is, $18,000 less $7,600—the table below shows the result:

| | First Allotment | Second Allotment | Total | Difference Between This Method and Chancellor's |
|---|---|---|---|---|
| (a) | $1,466.67 | $ 2,007.02 | $ 3,473.69 | $439.35 |
| (b) | 1,466.67 | 2,007.02 | 3,473.69 | 439.35 |
| (c) | 1,666.66 | 2,280.69 | 3,947.35 | 356.99[1] |
| (d) | 100.00 | 136.84 | 236.84 | 41.19 |
| (e) | 200.00 | 273.69 | 473.69 | 82.39 |
| (f) | 200.00 | 273.69 | 473.69 | 82.39 |
| (g) | 1,000.00 | 1,368.42 | 2,368.42 | 411.90 |
| (h) | 1,500.00 | 2,052.63 | 3,552.63 | 617.85 |
| | $7,600.00 | $10,400.00 | $18,000.00 | |

[1] The first three items in the "difference" column, aggregating $1,235.67, are minus, showing what these three would lose by this method as distinguished from the Chancellor's method. The last four are plus, indicating what the dollar beneficiaries would gain. [In dealing with fractional cents, mills have been omitted, hence *exact* results do not always correspond].

Impressed, as we are, by the testator's affirmative declaration that each named beneficiary should receive in proportion as the estate may increase or decrease in value, and that all of it should go to those who were mentioned, it must be held that the Chancellor was justified in using as a basis for apportionment the method that best suited this end. If appellant's theory is correct, and the will is inoperative except as to the specific items of three ninths plus $3,200, the residue would go under the law of descent and distribution, to be participated in by "34 or 40 nephews and nieces".[2] They were not mentioned. But since those who were to receive *the entire estate* were clearly identified, this wish cannot prevail if there is partial intestacy. The Chancellor was further fortified by appellant's assurance that she only wanted the truth of what was intended.

Affirmed.

LEFLAR, J., concurs.